# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

RONALD SLAUGHTER,

    Plaintiff,

v.

AMERICAN ARBITRATION
ASSOCIATION, et al.,

    Defendants.

Case No. 2:10-CV-01437-KJD-GWF

**ORDER**

    Currently before the Court is Defendants' Motion to Dismiss (#9).  Plaintiff filed a Response in opposition (#10), to which Defendants filed a Reply (#11).

    The instant case arises from an arbitration dispute between Dr. Ronald Slaughter ("Slaughter" or "Dr. Slaughter") and Laboratory Medicine Consultants, Ltd.  ("LMC") regarding a stockholder agreement entered into between Slaughter and LMC in 2001.  Slaughter v. Laboratory Medicine Consultants, Ltd., Case No. 2:10-CV-00437-GMN-PAL.

    LMC is a Nevada professional corporation which was formed in 1969 and operates as a pathology practice.  Dr. Slaughter worked at LMC for 31 years and retired June 30, 2006.  Pursuant to the parties' 2001 Stockholders Agreement, a portion of Slaughter's deferred compensation benefits was to be secured by an escrow of Dr. Slaughter's stock.  The parties now dispute whether

1   Dr. Slaughter's shares were ever placed in escrow.  Sometime after Slaughter's retirement, Aurora

2   Diagnostics, LLC ("Aurora") made an unsolicited proposal to purchase 100% of the equity of LMC

3   and retain the active LMC pathologists as employees.  The deal between Aurora and LMC closed on

4   December 10, 2007.  Slaughter alleges that his shares were not properly placed in escrow and that

5   LMC, its president, and the doctor-shareholders conspired to defraud him of the value of his shares.

6   Specifically, Slaughter alleges that the Defendant doctors each received an additional $1,147,879.00

7   by causing all outstanding LMC stock to be sold to Aurora including his stock, which should have

8   been placed in escrow.

9       In August of 2007, a state district court judge entered a revised order compelling LMC and

10   Dr. Slaughter to arbitrate claims and counterclaims related to the stockholders agreement.[1]

11   Subsequently, Plaintiff filed a related action in this court in March 2010, against LMC, Aurora, and

12   the shareholders of LMC for violations of the Exchange Act, contractual claims, conversion, and

13   conspiracy.  (See Case No. 2:10-CV-00437-GMN-PAL) (hereinafter referred to as Plaintiff's "first

14   federal action").

15       The 2001 Stockholder Agreement contained an arbitration clause requiring arbitration with

16   the American Arbitration Association ("AAA") for any dispute arising under the Agreement.

17   Plaintiff initially brought an arbitration demand against LMC on September 7, 2007.  See infra n.1.

18   Subsequently, Plaintiff filed a motion with the AAA to disqualify arbitrator Howard Roitman, which

19   was denied, and the arbitration case was then continued.  While the underlying arbitration was

20   proceeding, Slaughter filed his first suit in this Court on March 30, 2010, alleging causes of action

21   against LMC and its eleven doctor-shareholders for entering into a scheme to defraud Slaughter by

22   wrongfully converting his stock, depriving him of proceeds of the stock sale to Aurora, and enriching

---

24       [1]The Court will not recite the details of the underlying state court matters, other than to state that the Parties

25   were compelled to arbitrate all issues relating to the Stockholder Agreement. See Case No. 2:10-cv-00437-GMN-PAL
      (#18).  Subsequently, Dr. Slaughter filed an arbitration demand with the AAA in Case No. 79 168-00123-07.  More

26   factual information of the related state action is contained in the Court record for Case No. 2:10-cv-00437-GMN-PAL
      (#18).

2

1   themselves to his detriment.  On August 5, 2010, Plaintiff filed a motion in the first federal action

2   seeking to stay the underlying arbitration proceedings.  This Court denied the motion, and

3   subsequently dismissed the action in its entirety. (See Case No. 2:10-CV-00437-GMN-PAL)(#23).

4          Subsequently, Plaintiff filed his Complaint in the instant action on August 25, 2010, against

5   the AAA, arbitrator Howard Roitman, Sandra L. Marshall (Manager  of Alternate Dispute Resolution

6   Services for the Western Case Management Center of the AAA), and Lynn Cortinas (Senior Case

7   Manager for the Western Case Management Center of the AAA).  The Complaint brings one cause

8   of action pursuant to 42 U.S.C. § 1983, alleging that Dr. Slaughter's due process rights were violated

9   during the underlying arbitration proceedings.

10         Defendant's instant Motion seeks that the Court dismiss Plaintiff's Complaint pursuant to

11  Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  Specifically,

12  Defendants aver that they have immunity pursuant to N.R.S. § 38.229 for their conduct in

13  administering the arbitration proceedings, and that this action is an impermissible collateral attack on

14  the underlying arbitration.

15  **II. Standard of Law for Motion to Dismiss**

16         Pursuant to Fed. R. Civ. P. 12(b)(6), a court may dismiss a Plaintiff's complaint for "failure

17  to state a claim upon which relief can be granted."  A properly pled complaint must provide "a short

18  and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

19  8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  While Rule 8 does not require

20  detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation

21  of the elements of a cause of action."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Papasan

22  v. Allain, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to rise above the

23  speculative level."  Twombly, 550 U.S. at 555.  Thus, to survive a motion to dismiss, a complaint

24  must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  Iqbal,

25  129 S. Ct. at 1949 (internal citation omitted).

26

3

1    In <u>Iqbal</u>, the Supreme Court recently clarified the two-step approach district courts are to

2  apply when considering motions to dismiss.  First, the Court must accept as true all well-pled factual

3  allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth.

4  <u>Id.</u> at 1950.  Mere recitals of the elements of a cause of action, supported only by conclusory

5  statements, do not suffice.  <u>Id.</u> at 1949.  Second, the Court must consider whether the factual

6  allegations in the complaint allege a plausible claim for relief.  <u>Id.</u> at 1950.  A claim is facially

7  plausible when the Plaintiff's complaint alleges facts that allow the court to draw a reasonable

8  inference that the defendant is liable for the alleged misconduct.  <u>Id.</u> at 1949.  Where the complaint

9  does not permit the court to infer more than the mere possibility of misconduct, the complaint has

10  "alleged—but not shown—that the pleader is entitled to relief."  <u>Id.</u>  (internal quotation marks

11  omitted).  When the claims in a complaint have not crossed the line from conceivable to plausible,

12  Plaintiff's complaint must be dismissed.  <u>Twombly</u>, 550 U.S. at 570.

13  **III. Discussion**

14       **A. Arbitral Immunity**

15    As stated above, Defendants argue that the AAA and its arbitrators are immune from claims

16  brought by dissatisfied litigants pursuant to Nevada's Uniform Arbitration Act, NRS § 38.229.

17  Generally, the defense of arbitral immunity protects an arbitrator from liability for acts taken within

18  their jurisdiction and arising out of their arbitral functions in contractually agreed upon arbitration

19  hearings.  <u>Wasyl, Inc. v. First Boston Corp.</u>, 813 F.2d 1579, 1582 (9th Cir. 1987).

20    Under Nevada's Uniform Arbitration Act, NRS § 38.229, "an arbitrator or an arbitral

21  organization acting in that capacity is immune from civil liability to the same extent as a judge of a

22  court of this State acting in a judicial capacity."  NRS § 38.229.  The Nevada Supreme Court has

23  stated that "absolute immunity is a broad immunity that is granted sparingly to individuals

24  performing judicial or quasi-judicial functions."  <u>Marvin v. Fitch</u>, 232 P.2d 425, 427 (Nev. 2010).

25  The Ninth Circuit has clearly extended judicial immunity to arbitrators and arbitral organizations,

26  holding that "arbitrators are immune from civil liability for acts within their jurisdiction arising out

4

of their arbitral functions." <u>Acuna v. American Arbitration Association</u>, 2006 WL 1375239 (9th Cir. May 15, 2006)(finding that case law dictates arbitrators are immune from civil liability for acts within their jurisdiction arising out of their arbitral functions in contractually agreed upon arbitration hearings)(citations omitted).

Here, it is undisputed that the 2001 Stockholders Agreement contains an arbitration clause which requires arbitration of any disputes arising under that Agreement.  (<u>See</u> Case No. 2:10-CV-00437-GMN-PAL)(#18 at 5).  As the proceedings from which Plaintiff's claims arise were mandated by the Agreement, the Court finds that the AAA and its arbitrators are immune from civil liability under Nevada's Uniform Arbitration Act.  Accordingly, Defendants' Motion to dismiss should be granted under the doctrine of arbitral immunity.

**B. Vacatur of Award**

Additionally, under the Federal Arbitration Act, 9 U.S.C. § 1 <u>et seq</u>.  ("FAA") and Nevada's Uniform Arbitration Act, the Plaintiff's sole remedy for the alleged misconduct is to seek a vacatur or motion to set aside the underlying arbitral award.  Under the Federal Arbitration Act, a contractual provision wherein the parties agree to submit a dispute to arbitration is valid, irrevocable and enforceable, except on such grounds in law or equity as exist for the revocation of the contract to arbitrate.  U.S.C. § 2, <u>See</u> <u>Corey v. New York Stock Exchange</u>, 691 F.2d1205 (C.A. Mich 1982).  Once a decision has been rendered through arbitration as contractually proscribed, the award is binding on the parties unless the underlying contract to arbitrate is challenged pursuant to Section 2 of the FAA, or if the parties seek to avail themselves of the review provisions of Sections 10 and 11 of the Act.

Upon receipt of a proper motion, a court may vacate an arbitration award only if the arbitrators' conduct violated the FAA, or if the award is "'completely irrational'" or "'constitutes manifest disregard of the law.'"  <u>Stolt-Nielsen S.A. v. AnimalFeeds International Corp.</u>, 130 S.Ct. 1758, 1132–33 (2010)(quoting <u>G.C. & K.B. Invs., Inc. v. Wilson</u>, 326 F.3d 1096, 1105 (9th Cir.

2003)).  A federal court may vacate an arbitration award under the FAA where: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing or in refusing to hear pertinent and material evidence or engaged in any other misbehavior prejudicing a party's rights; or (4) the arbitrators exceeded their powers.  9 U.S.C. § 10.

Where, as here, a party alleges that his due process rights were violated during the arbitration proceedings, and that the arbitrator acted "in the clear absence of jurisdiction", his exclusive remedy is through challenging the arbitral award through a motion to vacate or set aside pursuant to 9 U.S.C. §§ 10, 11.  See also, Sander v. Weyerhaeuser Co., 966 F.2d 501 (9th Cir. 1992)("this court has been extremely unwilling to upset the streamlined nature of arbitration by permitting the launching of collateral attacks").  Here, Dr. Slaughter fails to set forth any argument for review of an arbitral decision or proceeding.  Instead, Plaintiff couches his dispute as a 42 U.S.C. § 1983 due process violation, in a clear attempt to have the Court review the substantive aspects of the underlying arbitration decision.

Not only is Plaintiff's action seeking review of the underlying arbitration decision but it brings claims identical to those Plaintiff brought previously in his motion seeking to stay the underlying arbitration proceedings in the first federal action.  (See Case No. 2:10-cv-00437-GMN-PAL)(Doc. #18).  Plaintiff's motion in the first federal action sought to stay the underlying arbitration proceedings pending the outcome of his federal securities law and breach of contract claims.  Specifically, Plaintiff's motion alleged that he could not "receive a fair and impartial arbitration and that his due process rights [were] being 'trampled' by the arbitrator."  (Id. at 2.) Plaintiff also claim[ed] that the arbitrator's amended findings of fact, conclusions of law and order" were "'incomprehensible'".  (Id.)(citations omitted).  Plaintiff contended that the arbitrator had no jurisdiction to dismiss Dr. Slaughter's claim to his proceeds from the subject stock transaction, and

that the only pleading properly before the arbitrator was his original demand filed September 10, 2007.  Id.

The Court denied the motion to stay, finding *inter alia*, that Plaintiff's dissatisfaction "with certain rulings of the arbitrator . . . [did] not entitle him to an order of this court overruling or countermanding the state court's compelling arbitration . . . [and that] dissatisfaction with certain rulings of the arbitrator, also does not establish that the arbitrator is biased or that Plaintiff's due process rights are being 'trampled.'" (Id. at 7).  Plaintiff has brought the instant action based upon the same allegations as his motion to stay arbitration, only cloaked here as a 42 U.S.C. § 1983 claim. Stated plainly Plaintiff is seeking an alternate route of review for his underlying arbitration decision, than those expressly provided in the FAA and Nevada's Uniform Arbitration Act.  Thus, the Court finds Plaintiff's action fails to state a plausible claim for relief.[2]

**IV. Conclusion**

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (#9) is **GRANTED**.

DATED this 2nd day of June 2011.

_____
Kent J. Dawson
United States District Judge

---

[2]Moreover, even if Defendants were not entitled to immunity in the performance of their arbitral functions, the Court finds that Plaintiff has failed to allege facts sufficient to establish this Court's personal jurisdiction over non-resident Defendants Sandra Marshall and Lynn Cortinas.

7